IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHEILA HANLON,

            Plaintiff,

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

            Defendant.

Case No. 1:16-cv-01822-MA

OPINION AND ORDER

JAMES J. GANNON
United Disability Lawyers Group
21822 Sherman Way, Suite 200
Canoga Park, CA 91303

LISA R. J. PORTER
JP Law PC
5200 S.W. Meadows Rd., Suite 150
Lake Oswego, OR 97035

     Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

1 - OPINION AND ORDER

JORDAN D. GODDARD
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

Attorneys for Defendant

MARSH, Judge

Plaintiff Sheila Hanlon seeks judicial review of the final decision of the Commissioner of

Social Security denying her application for a period of disability and disability insurance benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and application for

Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act,

42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3). For the reasons that follow, the Court affirms the Commissioner's decision.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed DIB and SSI applications on February 28, 2013, alleging disability

beginning December 30, 2008, due to acute rheumatoid arthritis, depression, abdominal pain, chest

pain, and migraines. Tr. Soc. Sec. Admin. R. ("Tr.") at 82, ECF No. 13. Plaintiff's claims were

denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an

administrative law judge ("ALJ"). The ALJ held a hearing on January 13, 2015, at which Plaintiff

appeared with her attorney and testified. A vocational expert, Frank Lucas, also appeared at the

hearing and testified. On February 24, the ALJ issued an unfavorable decision. The Appeals

Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final

decision of the Commissioner for purposes of review.

Plaintiff was born in 1961, and was 47 years old on the alleged onset of disability date, and 53 years old at the time of the ALJ's decision. Plaintiff has a high school education, attended a college of cosmetology, and has past relevant work as a rental agent, waitress, and travel consultant. Tr. 57, 72, 223.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work that exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ found that Plaintiff meets the insured status requirements through September 30, 2015. At step one, the ALJ found that Plaintiff has engaged in substantial gainful activity from January 1, 2009 through December 31, 2009.[1] At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, psoriatic arthritis, and fibromyalgia. At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform sedentary work with additional limitations: Plaintiff is limited to occasional climbing of ramps and stairs, but

---

[1] Plaintiff earned well above the level of substantial gainful activity in 2009. Tr. 19. Plaintiff did not amend her alleged onset date at the hearing. Tr. 51-53.

no climbing of ladders, ropes, and scaffolds. Plaintiff has no limitations in balancing and stooping, but she can never kneel, crouch, or crawl. Finally, Plaintiff is limited to no exposure to extreme cold or hazards such as work at unprotected heights or around moving mechanical parts. Tr. 22.

At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a travel consultant. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act from December 30, 2008 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, Plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated her testimony; (2) the ALJ improperly evaluated the opinions of her treating rheumatologist, W. Clay McCord, M.D; and (3) the ALJ improperly evaluated the lay testimony of her friend, Mary Johnson. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error. Alternatively, the Commissioner contends that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be

upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

## DISCUSSION

### I.    The ALJ Did Not Err in Discounting Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or

adverse side effects of any pain medication, and relevant character evidence.[2] *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that she attended cosmetology school from 2011 to 2012 to learn to cut and style hair, and that she attended classes for five hours each day. Tr. 57. Plaintiff described that her time was mostly in the classroom, but she also cut, styled, and permed hair for approximately 30 minutes each time. Tr. 58. Plaintiff further testified that for one month in 2011, she worked as a bartender full-time while also attending cosmetology school. Tr. 58.

Plaintiff testified that her primary medication is Enbrel, which she injects herself once per week. Tr. 62. Plaintiff stated that she also takes Aleve. Tr. 63. Plaintiff testified that her arthritis and low back pain are the worst. Tr. 64. Plaintiff stated that if she sits for too long in one position, she develops migraine headaches, and that she experiences migraine headaches every day. Tr. 65, 67. Plaintiff testified that she takes Vicodin for pain due to her fibromyalgia, but it does not interfere with her concentration. Tr. 67. Plaintiff testified that she suffers from gastrointestinal issues, and that she will not leave the house if her stomach is bothering her. Tr. 69-70. Plaintiff testified that she since she stopped working as a bartender and finished school, her psoriatic arthritis has deteriorated so much that she is essentially bedridden. Tr. 66. Plaintiff testified that she could not

---

[2] The Court observes that on March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective, and it eliminated the use of the term "credibility." The ALJ's decision in this case was issued February 24, 2015. The Court has previously determined that SSR 16-3p does not apply retroactively because 42 U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking. *Smith v. Colvin*, No. 6:15-cv-01625-MA, 2017 WL 388814, at *4 n.2 (D. Or. Jan. 27, 2017). *See, e.g., Wright v. Colvin*, No. 15-cv-02495-BLF, 2017 WL 697542, *9 (N.D. Cal. Feb. 22, 2017) (holding SSR 16-3p does not apply retroactively); *Thayer v. Colvin*, No. 2:16-cv-00545-DWC, 2017 WL 132450, at *7 (W.D. Wash. Jan. 13, 2017) (same). The Court adheres to that rationale here.

perform sedentary work because she gets migraine headaches when sitting for longer than five minutes, and she cannot lie in one position in bed for more than ten minutes. Tr. 65-67.

In an April 18, 2013 Function Report - Adult, Plaintiff described that her arthritis makes it difficult to complete personal care, but reported she can prepare food, complete laundry, and perform housework. Tr. 232-33. Plaintiff stated that she drives, goes shopping once a week, and attends church regularly. Tr. 233. Plaintiff stated that her impairments limit her ability to squat, bend, stand, walk, sit, kneel, climb stairs, complete tasks, and use her hands. Plaintiff estimated that she can walk half a city block. Plaintiff described no problems paying attention or following instructions. Tr. 235.

In the decision, the ALJ offered specific, clear and convincing reasons for the adverse credibility determination, including: (1) inconsistency with objective medical records; (2) poor effort during examination; and (3) inconsistency with reported daily activities.

Contradiction with the medical record is a relevant consideration in discounting a claimant's credibility. *Carmickle*, 533 F.3d at 1161; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding that an ALJ may consider lack of medical evidence but it cannot be the only factor supporting an adverse credibility finding); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective . . . testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's symptoms and their disabling effects." (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ thoroughly discussed numerous objective treatment records that undermine Plaintiff's subjective allegations of significant physical limitations. The ALJ detailed that Plaintiff contended in her disability applications and her hearing testimony that she is most limited by her

back pain and arthritis, yet lumbar imaging revealed only mild diffuse disc space narrowing. Tr. 20, 64, 82, 221, 326. Additionally, the ALJ detailed that Plaintiff's physical examinations have generally been normal. Tr. 23. The ALJ discussed that in early 2011, Plaintiff had intact sensation, intact reflexes, intact motor strength, and no tenderness to palpitation, without evidence of atrophy and no loss of tone. Tr. 23, 388-91. Records cited by the ALJ show little swelling due to her psoriatic arthritis with Plaintiff reporting stiffness in her feet, ankles, and hips. Tr. 384, 388, 391. As the ALJ correctly indicated, examination findings in 2011 and early 2012 were similar, showing that Plaintiff's gait was normal, with normal tone, and no atrophy. Tr. 378-87. The ALJ cited records showing that in May 2012, Plaintiff had reduced psoriatic arthritis symptoms without skin flares, and that Plaintiff complained of fibromyalgia pains, and that she was then working as a waitress and in no distress. Tr. 378. The ALJ indicated that in September 2012, Plaintiff reported that she had tenderness in her hands bilaterally, however, Plaintiff had a normal gait, normal tone, and no atrophy. Tr. 374-75. As the ALJ accurately found, the bulk of Plaintiff's multi-system examinations in 2011 and 2012 reveal results within normal limits. *See, e.g.,* Tr. 374, 380, 382, 384, 386, 388, 390.

The ALJ also detailed that in early 2013, Plaintiff rated her fibromyalgia pain at a two of five, other than her back pain. Tr. 23, 370. The record reveals that in January 2013, Plaintiff complained of headaches, myalgias, neck pain, a rash, and overall weakness. Tr. 370. Plaintiff indicated she was receiving moderate relief from oral narcotics, rest, and Cymbalta. Tr. 370. As the ALJ detailed, in May and July 2013, Plaintiff's examination revealed no focal weakness, normal coordination, intact reflexes, and a normal gait. Tr. 23, 365. Records cited by the ALJ show Plaintiff had a normal mood and affect, no tenderness, full range of motion in joints and spine, and no atrophy. Tr. 23, 361,

366. Plaintiff then complained of arm pain and her physician suspected muscle spasms. Tr. 365. The ALJ also detailed that in August 2013, Plaintiff complained of weakness in her hands and arm pain, but on examination, Plaintiff demonstrated full muscle strength in her hands, biceps, and shoulders. Tr. 365, 354-55. As the ALJ correctly found, Plaintiff's October 2013 examination revealed normal findings; Plaintiff denied any increased psoriatic arthritis symptoms, no flares, and reported no headaches and on examination she displayed no weakness, no tenderness, normal coordination, full range of motion, with a normal gait and no atrophy. Tr. 365-66.

The ALJ's findings are wholly supported by substantial evidence. Based on the largely benign examination findings, the ALJ reasonably could infer that the severity of Plaintiff's subjective limitations are not supported by the objective medical evidence and appropriately discounted her credibility on this basis. *Carmickle*, 533 F.3d at 1169; *Imel v. Comm'r Soc. Sec. Admin.*, Case No. 6:16-cv-00560-MA, 2017 WL 3238230, *5 (D. Or. July 31, 2017) (upholding ALJ's adverse credibility determination where claimant's limitations not fully supported by medical record).

Plaintiff contends that the ALJ erred in relying on the lack of objective evidence to discredit her because her fibromyalgia symptoms are entirely subjective, citing *Belanger v. Berryhill*, 685 F.App'x 596, 598 (9th Cir. 2017), and *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001). . In *Belanger* and *Rollins* the Ninth Circuit has recognized that fibromyalgia cannot be diagnosed based on objective tests, but instead is diagnosed through a claimant's subjective reports of pain. *Belanger*, 685 F.App'x at 598 (holding ALJ erred in discounting treating physician's opinion because it relied on claimant's subjective complaints); *Rollins*, 261 F.3d at 855 (noting that fibromyalgia is diagnosed through a claimant's self-reports). Plaintiff's argument misses the mark.

Here, unlike *Rollins* and *Belanger*, the ALJ did not discredit Plaintiff because there was lack of objective evidence to support her fibromyalgia diagnosis. Indeed, the ALJ found Plaintiff's fibromyalgia a severe impairment at Step Two. Tr. 20. Instead, the ALJ found the medical evidence did not verify the degree of physical limitations she alleges resulting from all of her conditions. Indeed, Plaintiff did not identify fibromyalgia as a primary source of her limitations in either her disability applications or her hearing testimony. Tr. 64, 82, 221. In the decision, the ALJ discussed at length Plaintiff's medical records that undermine the severity of her complaints, including multiple visits with her treating rheumatologist expressing essentially normal findings. The ALJ's findings are wholly supported by substantial evidence, are a reasonable interpretation of the evidence, and will not be disturbed. *Molina*, 674 F.3d at 1111.

Second, the ALJ discussed that Plaintiff occasionally gave poor effort during her examinations, which undermined her credibility. The failure to give full or consistent effort during examinations is a relevant credibility consideration. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ appropriately considered claimant's self-limiting behaviors in adverse credibility determination); *Chaudry v. Astrue*, 688 F.3d 661, 671-72 (9th Cir. 2012) (ALJ properly considered claimant's failure to give adequate effort during testing to discount credibility). As the ALJ discussed, Plaintiff gave poor effort on examination with her primary care physician Debra Hartley, M.D., making it difficult to evaluate for physical findings. Tr. 23. Dr. Hartley's July 24, 2014 treatment notes show that Plaintiff complained of back pain radiating down her leg and up her back. Tr. 428. Plaintiff also complained of chest pain for six months and shoulder and arm pain for six weeks. Dr. Hartley's notes show that on examination, Plaintiff had a normal range of motion in her neck, and exhibited tenderness over the entire exam of her shoulder, hip and legs. Tr. 429. As the

ALJ indicated, Dr. Hartley reported that Plaintiff's shoulder exam was not diagnostic as she had inadequate effort. Tr. 429. Dr. Hartley's September 29, 2014 treatment note is similar. In September 2014, Plaintiff complained to Dr. Hartley of all-over body pain, and she reported tenderness to palpation along her cervical, thoracic, and lumbar spine, but Dr. Hartley could not assess her strength in her hips and knees due to "poor effort." Tr. 421-22. Additionally, Dr. Hartley indicated that Plaintiff demonstrated subjective pain in the right knee, but the exam was negative for radiculopathy. Tr. 22, 423.

Dr. Hartley reported in her September 2014 treatment notes that it was "difficult to use for full evaluation" because Plaintiff was in pain during the examination, and Dr. Hartley agreed to re-submit the request for a lumbar MRI. Tr. 423. As the ALJ discussed, Plaintiff's prior lumbar x-rays showed only mild degenerative changes. And, at the hearing, Plaintiff admitted that no lumbar MRI has been performed. Tr. 60. Reviewing the record as a whole, the ALJ's findings are supported by substantial evidence. The ALJ reasonably could infer that Plaintiff gave poor effort during her examinations in 2014, and discount her credibility on this basis. *See Cossette-Johnson v. Comm'r Soc. Sec. Admin.*, Case No. 3:12-cv-00383-MA, 2013 WL 1681980, *7 (D. Or. Apr. 16, 2013) (ALJ did not err in discrediting claimant's subjective complaints for giving poor effort in some examinations). Although Plaintiff now proposes a different interpretation of Dr. Hartley's treatment notes, in the context of the record as a whole, the ALJ's interpretation is reasonable. *Molina*, 674 F.3d at 1111.

Lastly, the ALJ properly discounted Plaintiff's credibility because the degree of limitation she alleged was inconsistent with the extensive activities she performed and described. Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting

a claimant's testimony. *Tommasetti*, 533 F.3d at 1039; *see Thomas*, 278 F.3d at 958-59 (inconsistency between claimant's testimony and claimant's conduct supported rejection of claimant's credibility). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally disabling impairment." *Molina*, 674 F.3d at 1113.

For example, the ALJ discussed that Plaintiff contended in her application that she became unable to work due to her alleged impairments as of December 30, 2008, yet Plaintiff attended cosmetology school at least five hours a day from 2011 to 2012, while contemporaneously working full-time as a bartender, albeit briefly. Tr. 24, 58. *See also Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (discounting claimant's credibility where she recently worked and sought out other employment while pursuing disability). As the ALJ also noted, Plaintiff's allegation that her conditions have deteriorated so substantially after 2012 that she is essentially bedridden is inconsistent with her assertions in an April 18, 2013 Function Report, in which she reported that she is independent in self-care, prepares meals, drives, goes shopping weekly, regularly attends church, cares for her young daughter, and completes laundry and other household chores. Tr. 24, 230-35. The ALJ findings are fully supported by substantial evidence in the record as a whole. Based on the wide variety of activities performed by Plaintiff and her ability to attend school and work, the ALJ reasonably found that her activities are inconsistent with her allegations of total disability. *See Clough v. Comm'r Soc. Sec. Admin.*, Case No. 6:15-cv-00140-MA, 2015 WL 8751857, *5 (D. Or. Dec. 14, 2015) (ALJ appropriately discounted Plaintiff's alleged disabling social anxiety based on her ability to attend college, raise children, volunteer at school, and perform all necessary household chores). The ALJ's findings concerning Plaintiff's daily activities are supported by substantial

evidence in the record and provides additional support for the ALJ's adverse credibility determination. The court concludes that when the ALJ's first, second, and third reasons are combined, they readily provide clear and convincing support for the ALJ's adverse credibility determination. *Molina*, 674 F.3d at 1113 (finding claimant's daily activities and inconsistency with medical evidence supported adverse credibility determination).

In short, the ALJ thoroughly discussed the medical record and provided specific details about the lack of objective support for Plaintiff's alleged physical limitations, her failure to provide full effort, and the inconsistency between Plaintiff's reported activities and her alleged limitations. The ALJ has provided specific, clear and convincing reasons to support the adverse credibility determination that are based on reasonable inferences drawn from the record as whole. *Molina*, 674 F.3d at 1111. The ALJ's findings are sufficiently specific to permit the Court to conclude that Plaintiff's credibility was not arbitrarily discredited. *Brown-Hunter*, 806 F.3d at 493. The ALJ did not err.

## II.     The ALJ Did Not Err in Evaluating Dr. McCord's Opinions

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim,* 763 F.3d at 1160; *Garrison,* 759 F.3d at 1012; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted)(alterations in original); 20 C.F.R. §§ 404.1527(c); 416.927(c). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and

convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. §§ 404.1527(c)(2-6); 416.927(c)(2-6). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of the opinion, and its consistency with other evidence in the record as a whole. 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(d)(2-6); *Ghanim*, 763 F.3d at 1161. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Trevizo v. Berryhill,* 862 F.3d 987, 997 (9th Cir. 2017). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas,* 278 F.3d at 957.

Plaintiff argues that the ALJ failed to provide adequate reasons for discounting the opinions of W. Clay McCord, M.D., Plaintiff's treating rheumatologist. Dr. McCord began treating Plaintiff in February 2011, when Plaintiff self-referred to his clinic and reported that she had been diagnosed with rheumatoid arthritis some 20 years prior. Tr. 390, 394. Dr. McCord treated Plaintiff approximately once every two to four months from 2011 through 2014.

Dr. McCord provided multiple opinions. First, in a November 7, 2013 letter, Dr. McCord opined that Plaintiff is "permanently disabled despite medications because she cannot sit in excess of 90 minutes without position change, cannot stand beyond 15 minutes at a time, and fine dexterity has some impairment." Dr. McCord further stated that Plaintiff's condition was unlikely to improve. Tr. 353. Second, Dr. McCord completed a Medical Source Statement dated February 14, 2014, in which he provided diagnoses of psoriatic arthritis, fibromyalgia, and lumbar degenerative joint

disease. Tr. 402. Dr. McCord opined that Plaintiff can walk for two blocks, can sit for a total of four hours in a day, stand and walk for less than two hours a day, and needs to be able to change positions at will. Tr. 403. Dr. McCord stated that Plaintiff requires four unscheduled breaks each day, can occasionally lift 10 pounds or less, should never climb ladders, can rarely bend, stoop, crouch or squat, and has no limitations with reaching, handling, or fingering. Tr. 404. Dr. McCord further provided that Plaintiff would be off-task 25 percent or more of the day, would be absent four or more days each month, and that these limitations have been present since 2012. Tr. 403.

Third, Dr. McCord provided a November 4, 2014 letter in which he opined that Plaintiff is under his care for "generalized osteoarthritis of the spine, chronic pain syndrome, and fibromyalgia." Tr. 469. Dr. McCord further stated that Plaintiff's functioning had deteriorated and that she "remains permanently disabled." Tr. 469. Fourth, Dr. McCord completed a December 22, 2014 Physical Medical Source Statement, in which he provided that Plaintiff's diagnoses are psoriatic arthritis, fibromyalgia, and depression. Tr. 406. Dr. McCord noted that Plaintiff could walk one block, sit for four hours in a day, and stand and walk for less than two hours, and needs to be able to change positions at will. Tr. 407. Dr. McCord further indicated that Plaintiff needs three to four unscheduled breaks, can occasionally lift 10 pounds or less, can never climb ladders, can rarely climb stairs, crouch or squat, and has no significant limitations with reaching, handling, or fingering. Tr. 408. Dr. McCord provided that Plaintiff would be off-task 15 percent of the time, and that her symptoms and limitations had been present since 2008. Tr. 409.

Dr. McCord's opinions are contradicted by those of nonexamining agency physicians Neal E. Berner, M.D., and Mary Ann Westfall, M.D., who opined that Plaintiff was capable of performing

a reduced range of light work. Tr. 88-89, 113-14. Therefore, the ALJ was required to provide specific and legitimate reasons for discounting Dr. McCord's opinions.

The ALJ's reasoning readily meets this standard. In the decision, the ALJ gave Dr. McCord's opinions "little weight" because: (1) his opinions are inconsistent with his own treatment notes; (2) his medical source statements provided no narrative explanations; and (3) his opinions relied on Plaintiff's subjective complaints. Tr. 24.

First, as the ALJ correctly found, Dr. McCord's various opinions are inconsistent with the generally benign findings detailed in his treatment notes. "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician[.]" *Ghanim*, 763 F.3d at 1161. To be sure, as the ALJ indicated, the bulk of Dr. McCord's treatment notes indicate that Plaintiff's examinations were within normal limits. Tr. 23-24, 356, 361, 365-66, 375, 379, 381, 383, 385, 387, 389, 389. Indeed, despite the extreme sitting, walking, and standing limitations assessed by Dr. McCord, the ALJ points to treatment notes showing full range of motion and normal strength. Tr. 361, 365, 378-87. Dr. McCord's examinations repeatedly revealed normal strength, tone, gait, full range of motion, without atrophy, weakness or tenderness. *See, e.g.,* Tr. 374, 380, 382, 384, 386, 388, 390.

The ALJ's findings are wholly supported by substantial evidence in the record. Thus, the ALJ has provided a specific and legitimate reason for discounting Dr. McCord's opinions – the incongruity between his opinions and his treatment notes. *See Molina*, 674 F.3d at 1111-12 (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Valentine*, 574 F.3d at 692-93 (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion); *Bayliss*, 427 F.3d at 1216

(contradiction between physicians opinion and treatment notes a clear and convincing reason to discount treating physician); *Batson*, 359 F.3d at 1196 (ALJ may discredit treating physicians' opinions that are unsupported by objective medical findings or the record as a whole).

Second, as the ALJ appropriately found, Dr. McCord provided little narrative explanation for his extreme limitations. *Molina*, 674 F.3d at 1111-12 (ALJ properly rejected physician assistant's opinion where it consisted of a check-the-box form and failed to provide supporting reasoning); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions"); *De Guzman v. Astrue*, 343 F. App'x 201, 209 (9th Cir. 2009) (ALJ was "free to reject" doctor's check-off report that did not explain basis for conclusions). To be sure, the check-the-box medical source statements provide very little explanation for the limitations ascribed. For example, Dr. McCord offered "multiple trigger points" as a clinical finding supporting his opinion in the December 2014 Medical Source Statement. Tr. 406. However, Dr. McCord's treatments notes disclose relatively few complaints of myalgias, or tenderness to palpitation over the entire three years of Plaintiff's treatment. Tr. 361, 365, 370. On the contrary, as discussed in detail above, Dr. McCord's treatment notes show most examinations were within normal limits, without weakness or tenderness. And, Dr. McCord provides no narrative explanation as to why he opined that Plaintiff would be off task 25 percent in a typical workday due to interferences with attention and concentration, which is contrary to Plaintiff's testimony that she has no such difficulties. *Compare* Tr. 405 *with* Tr. 67, 235. Therefore, when viewing the medical source statements in conjunction with Dr. McCord's relatively benign treatment notes, the ALJ reasonably discounted his check-the-box forms because they lacked a narrative explanation. The ALJ's findings

are wholly supported by substantial evidence, and when the first and second reason are combined, would provide clear and convincing support, let alone specific and legitimate reasons, for discounting Dr. McCord's opinions.

Third, the ALJ discounted Dr. McCord's opinions because they appeared to be based on Plaintiff's appropriately discounted subjective complaints. Plaintiff appears to contend that the ALJ erroneously demanded objective evidence to support her allegations of pain. Plaintiff complains that her fibromyalgia and psoriatic arthritis do not lend themselves to objective findings, therefore, Dr. McCord was required to rely upon her subjective complaints of her pain, citing *Belanger,* 685 F.App'x at 598, and *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). In *Belanger* and *Benecke* the Ninth Circuit recognized that fibromyalgia cannot be diagnosed based on objective tests, but instead is diagnosed through a claimant's subjective reports of pain. *Belanger*, 685 F.App'x at 598 (holding ALJ erred in discounting treating physician's opinion because it relied on claimant's subjective complaints); *Benecke*, 379 F.3d at 594 (holding ALJ erred in discounting physician's opinion of claimant's fibromyalgia because it was not based on objective testing). However, unlike *Belanger* and *Benecke*, the ALJ in this case discounted Dr. McCord's opinion not because it lacked objective findings to support a diagnosis of fibromyalgia, but because Dr. McCord's assessed limitations were not supported by his own treatment notes and because he failed to provide a narrative assessment explaining the discrepancy. These are proper reasons to discount Dr. McCord's opinion. *Delaplain v. Comm'r Soc. Sec. Admin.*, Case No. 2:15-cv-02439-HZ, 2017 WL 1234133, *5 (D. Or. Mar. 17, 2017) (holding ALJ appropriately discounted physician's opinion because treatment notes about claimant's fibromyalgia were inconsistent with limitations assessed).

As the ALJ discussed and detailed above, Dr. McCord's treatment notes persistently show that Plaintiff has a normal gait, no atrophy, and no musculoskeletal issues. Therefore, the ALJ could reasonably infer the limitations set forth in his opinions were based on Plaintiff's appropriately discounted subjective complaints. The ALJ's findings are supported by substantial evidence and provides another specific and legitimate basis for discounting Dr. McCord's opinions. *Thomas*, 278 F.3d at 957 (ALJ properly rejected treating physician's opinion where ALJ made findings setting out a detailed summary of facts, conflicting evidence, and stating interpretation of that evidence, and making findings); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding ALJ properly discounted treating physician's opinion whose conclusions were based largely on claimant's subjective complaints that lacked credibility).

Finally, the ALJ indicated that Dr. McCord failed to explain a diagnosis of "drug seeking." Tr. 25. Drug seeking behavior may be an appropriate basis for discounting a claimant's credibility or doctor's opinion. *Young-Fitch v. Colvin*, Case No. 1:12-cv-00740-JE, 2013 WL 5161205, *14 (D. Or. Sept. 11, 2013) (upholding ALJ's rejection of physician's opinion because it did not take into consideration claimant's drug seeking behavior); *see also Coffman v. Astrue*, 469 F.App'x 609, 611 (9th Cir. 2012) (upholding ALJ's rejection of physician's opinion because it failed to address drug seeking behavior). As the ALJ correctly indicated, Plaintiff's medical records carry a diagnosis of drug seeking from February 2011 through November 2014, and Dr. McCord failed to discuss that diagnosis. Tr. 357. Plaintiff acknowledges that drug seeking appears in her records, yet contends that Dr. McCord clearly believed that Plaintiff's limitations were cause by her impairments. Pl.'s Br. at 8, ECF No. 14. In the ALJ's decision, it is unclear whether the ALJ discounted Dr. McCord's opinion on this basis. The court need not resolve whether the ALJ actually relied upon this factor

to discount Dr. McCord's opinion. Even assuming *arguendo* that the ALJ did so erroneously, the error is harmless. The ALJ has identified other reasons backed by substantial evidence that provide at least specific and legitimate reasons for discounting Dr. McCord's opinions. Because any error is inconsequential to the ultimate nondisability determination, it is harmless. *Molina*, 674 F.3d at 1115.

**III.    The ALJ Provided Germane Reasons for Discounting the Lay Testimony**

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. *Molina*, 674 F.3d at 1114; *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Inconsistency with the objective medical evidence is a germane reason for rejecting lay witness testimony. *Bayliss*, 427 F.3d at 1218.

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay testimony of Plaintiff's friend, Mary Johnson. The Commissioner responds that the limitations described by Ms. Johnson parrot Plaintiff's subjective complaints, and that ALJ provided germane reasons for giving Ms. Johnson's testimony "little weight." The Court agrees with the Commissioner.

In the ALJ's decision, the ALJ discussed the two function reports completed by Mary Johnson. For example, the ALJ discussed that in a June 2013 Function Report, Ms. Johnson

described that Plaintiff is unable to lift more than three pounds, can stand for 10 to 15 minutes, and tires easily. Tr. 25, 240. As the ALJ noted, Ms. Johnson reported that Plaintiff needs no assistance with self-care, could care for her daughter, prepares meals, and performs household chores. Tr. 25, 241-42. As the ALJ detailed, in November 2014, Ms. Johnson discussed that Plaintiff's symptoms had worsened, and that Plaintiff spends most of her time in bed. Tr. 25, 271. Additionally, Ms. Johnson reported that Plaintiff needs assistance with bathing, and making meals, cannot stand or sit, stand or walk for more than five minutes. Tr. 276. However, as the ALJ noted, Ms. Johnson also indicated that Plaintiff is capable of preparing meals, some light housework and laundry, drives, goes shopping all day, and attends church when feeling up to it. Tr. 25, 275. In the decision, the ALJ gave Ms. Johnson's lay testimony "little weight" for three reasons: (1) it relied on Plaintiff's previously discounted subjective statements; (2) is inconsistent with the objective medical evidence; and (3) is inconsistent with Plaintiff's reported activities. Tr. 25.

Ms. Johnson's statements do not differ significantly from Plaintiff's and fail to describe limitations beyond those rejected by the ALJ with well-supported, clear and convincing reasons as discussed at length above. For example, Ms. Johnson, like Plaintiff, provided that since 2014, Plaintiff is in constant pain, spends most of her time in bed, and being in one position for longer than five minutes causes pain. Tr. 65-66, 271-276. In light of the similarity between Ms. Johnson's statements and Plaintiff's own subjective complaints, and because of the Court's conclusion that the ALJ provided clear and convincing reasons for providing limited weight to Plaintiff's subjective complaints, "it follows that the ALJ also gave germane reasons" for rejecting Ms. Johnson's testimony. *Valentine*, 574 F.3d at 694 (where ALJ provides clear and convincing reasons for rejecting a claimant's testimony and the lay testimony is similar, the ALJ has provided germane

reasons); *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (same); *see also Lewis*, 236 F.3d at 511 (inconsistency with medical evidence is germane reason for rejecting lay testimony). Consequently, the ALJ did not err in discounting the lay testimony.

### CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to Plaintiff is AFFIRMED.

IT IS SO ORDERED.

DATED this __6__ day of SEPTEMBER, 2017.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge